JUDGMENT

Justice VILES.
Cynthia Standingwater was employed as a floor sales clerk by Cherokee Nation Bingo Outpost (now Cherokee Nation Enterprises, Inc. or CNE) from September 1993 until her employment was terminated in October 1994. The case has several similarities to the Looney[1] case, which is in the decision-writing process at the same time. Testimony in each of the cases showed that the position of floor sales clerk earned large sums in tips, while jobs similar in many ways did not earn such tips, thereby creating great disparity among pay rates of co-workers and making the job of floor sales clerk a highly-sought prize.
In spite of Ms. Standingwater’s having such a desirable job, testimony showed that she had endangered the job by accumulating eight unexcused tardies and that a ninth unexcused tardy or an unexcused absence would be a typical level at which an employee would be terminated. She was already unhappy at work and when CNE assigned her to work in the Mega Booth, a position which did not allow one to earn tips, Ms. Standingwater considered this a demotion and didn’t come to work the next day, nor did she call in. This action is called a “no call/no show” and when she was three and one half hours late for work the following day with no call and no excuse, she was terminated.
Testimony showed that Ms. Standingwa-ter’s work as a floor sales clerk had not been up to expectations. Management wanted to try her skills in the Mega Booth, as an effort to more efficiently match the employee with the job. Ms. Standingwa-ter, however, saw the assignment as “the last straw[2]” in a pattern of oppression coming from her supervisor, Sandra Fletcher. In addition, since the Mega Booth work would not allow her to receive tips, Petitioner saw herself going from a job which paid her $38,000 per year to a job which would pay her only $12,000 per year[3]. She discounted the fact that her assignment to the Mega Booth was for only three days on the next shift with a scheduled return to floor sales clerk for the three days following the Mega Booth days. She disputed CNE’s right to deploy its personnel to management’s satisfaction and ignored her own obligations to be a team player. As stated, she then took the next day off (no call/no show) and then was 3 1/2 hours late the following day. Her employment was then terminated and she has brought this appeal.
An objective observer might consider her better off out of work than she had *13 been at CNE. At trial, Ms. Standingwater said:
The stress level was from August to this time [mid-October], At this time I was at the end of my rope.... I cried daily at work. I had headaches that lasted weeks at a time working with the stress.... I felt defeated and I felt like no one cared[4].
A move to the Mega Booth might have meant a new supervisor; it certainly would have meant new surroundings and perhaps less stress. However, she was not whiling even to try the Mega Booth, saying “I thought they were trying to send me over the edge” (Page 164, line 9) with the assignment to the Mega Booth.
Some of her testimony calls her credibility into question. She, like Ms. Looney, admitted the under reporting of tips to the IRS. Ms. Standingwater says that 10% of her tips were reported and no more. Her claim for damages reads that she received an average of $100 per day in tips and worked five days a week[5]. She worked roughly 13 months for CNE and if we can assume constant work during that period, that’s about 56 weeks of tips or $27,950. Let’s round it to $28,000. Her testimony is she reported 10% ($2,800), thus she under reported $25,200 in income-a substantial amount. If the Petitioner admits lying to the IRS (“Under penalties of perjury ...” the tax forms read), how much credibility should we give her testimony?
It is little wonder that floor sales clerk jobs are so highly prized and that Petitioners are willing to go through the appeal process in this Court and admit their tips and tax arrangements under oath[6]. This Court certainly cannot sanction under reporting of taxes and continues to be stunned that Petitioners claim tips as damages and in doing so, admit, under oath, that they have paid only a fraction of the taxes due on past tipsAre we to assume that if we award tips as damages for the period that these Petitioners have been out of work, that they will suddenly decide to follow[7] the law and report the full amount of tips to the IRS and pay taxes on that amount? Or are we being asked to be a party to continued illegal conduct? How could we ever order the employer to pay an amount that is speculative, uncertain, and is derived from customers? How can we ascertain that petitioners would not have been transferred to non-tip-receiving jobs the following week, if their employment had continued?
Just wrhat does the Cherokee Constitution call for this Court to do? It calls for us to insure that no employee of the Cherokee Nation is terminated “except for cause[8]”. It doesn’t require that the tribe or tribal entity provide a job for life or indeed for any given period, just that when it terminates someone, that due process be followed and that the firing not be for the “wrong reasons”. This Court has carefully avoided listing the “wrong reasons”, but our series of decisions gives insights into some permissible reasons. Objective business decisions have qualified before.
Here, we are asked to evaluate whether CNE’s practice of dismissal upon three unexcused absences is arbitrary and *14 unfair. We hold that it is not. We also need to decide whether or not CNE’s practice of counting three unexcused tardies as one unexcused absence is arbitrary and unfair. We hold that it is not. Was Petitioner’s termination after eight unexcused tardies, a no call/no show, and a 3 1/2 hour late show up the following day satisfactory cause for her termination? We hold it was. We find for the defendant Cherokee Nation Enterprises, Inc.
IT IS SO ORDERED.
Justice KEEN Concurs.
Dissent by Chief Justice BIRDWELL.

. Julie R. Looney vs. Cherokee Nation Bingo Outpost, Inc., Judicial Appeals Tribunal, Case No. 96-05-V.

. Transcript, p. 163, line 4.

.My calculations from Petitioner’s Exhibit 8, using $2000 yearly bonus, 32 hours/week (⅜ $6.00/hr, and $100/day (⅛ 5 days/wk for tips.

. Transcript, p. 162, line 25-p. 163, line 8.

. See Petitioner’s Exhibit # 8, ‘'Summary of Petitioner’s Damages.”

. While this Court can’t dictate CNE’s compensation policies, we nonetheless urge that CNE take steps to educate employees on proper tax reporting and to consider lessening the wage disparity between similar positions.

. See Looney, mentioned above.

. Cherokee Constitution of 1975, Article XII.